UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MITZI CARMAN and DONALD CARMAN, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ALDER HOLDINGS, LLC and JOHN DOES 1-10.<br><br>    Defendants. | Case No. 4:22-cv-10917 |

## CLASS ACTION COMPLAINT

**NOW COME** MITZI CARMAN ("Mitzi") and DONALD CARMAN ("Donald") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their undersigned counsel, complaining of ALDER HOLDINGS, LLC ("Defendant") and JOHN DOES 1-10, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d

1

728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises under the TCPA, a federal statute.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

6. Plaintiffs are natural persons, over 18-years-of-age, who at all times relevant resided in Flint, Michigan

7. Plaintiffs are "person(s)" as defined by 47 U.S.C. § 153(39).

8. Defendant is a limited liability company that maintains its principal place of business in West Orem, Utah.

9. Defendant provides home security services to consumers in numerous states in the United States, including Michigan.

10. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

11. JOHN DOES 1-10 are third party vendors/agents that Defendant engages to collect past due balances owed to Defendant. The identities of JOHN DOES 1-10 are unknown to Plaintiffs at this time and will be ascertained through discovery.

12. At all times relevant, Defendant had an agency relationship with JOHN DOES 1-10 whereby Defendant (as the principal) had the right to control and direct the activities of JOHN DOES 1-10 (as the agents) and JOHN DOES 1-10 (as the agents) had the authority to act on behalf of Defendant. Accordingly, Defendant, as the principal of JOHN DOES 1-10, is liable for the acts of its agents John Does 1-10.

## FACTUAL ALLEGATIONS

13. At all times relevant, Plaintiffs were sole operators, possessors, and subscribers of the cellular telephone numbers ending in 9541(Mitzi) and 4721 (Donald).

14. At all times relevant, Plaintiffs' numbers ending in 9541 and 4721 were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

15. In 2016, Plaintiffs signed up for home security services with Defendant.

16. In February 2022, Plaintiffs canceled their home security services by submitting the requisite cancellation form to Defendant via email.

17. For some unknown reason, Defendant did not accept Plaintiffs' cancellation request.

18. Instead, in February 2022, Defendant began placing collection calls to Plaintiffs' cellular phone numbers in an attempt to collect an alleged past due balance on the account.

19. In response to Defendant's collection calls, Mitzi advised Defendant that the March 2022 payment would be the last payment that Plaintiffs would make as the Plaintiffs canceled their services in February 2022.

20. Plaintiffs made their final payment on or around March 1, 2022.

21. Despite Plaintiffs' multiple attempts to cancel Defendant's services, Defendant continued placing collections calls to Plaintiffs' cellular phone numbers in an effort to collect a past due balance on the account.

22. In April 2022, Plaintiffs answered some of Defendant's collection calls and (1) disputed that they owed a balance on the account as they canceled their services and made a final payment; and (2) requested that Defendant cease its collection calls.

23. Plaintiffs' disputes and requests that the collection calls cease fell on deaf ears and Defendant continued placing collection calls to Plaintiffs' cellular phone.

24. In the calls that Plaintiffs answered, Plaintiffs were greeted with an artificial and/or prerecorded voice asking Plaintiffs to wait for a live representative.

25. In the calls that Plaintiffs did not answer, Defendant left voicemails on Plaintiffs' cellular phones stating:

> "This your home security provider Alder calling with an important message about your account. This is a time sensitive matter so it is important that you contact us at your earliest convenience at 801-441-1636. Thank you and we look forward to hearing from you."

26. It was clear to Plaintiffs that all of Defendants' phone calls utilized an artificial and/or prerecorded voice ("robocalls") as (1) all voicemails contained the identical message; (2) all voicemails were precisely the same duration; (3) the voice in the voicemails and the greeting in answered calls was monotone and was conspicuously not the voice of a live representative; (4) the caller never identified themselves by name; (5) none of Defendant's voicemails identified by name the intended recipient of the call; and (6) all voicemails directed Plaintiffs to call the same number (call center) to speak to an unidentified representative.

27. On April 22, 2022, Mitzi answered one of Defendant's robocalls and renewed her request that Defendant cease its robocalls as the calls were harassing and disruptive.

28. In response, the representative advised Mitzi that the calls are not "harassment" and that the calls would continue "unit the bill is paid."

29. To date, Defendant has placed no less than twenty (20) robocalls to each Plaintiff's cellular phone *after* Plaintiffs individually requested that the calls cease.

30. All of Defendant's robocalls were placed from the phone number (231) 570-8147.

31. Defendant's incessant robocalls have invaded Plaintiffs' privacy and have caused Plaintiffs actual harm, including but not limited to: aggravation that accompanies unsolicited robocalls, increased risk of personal injury resulting from the distraction caused by the robocalls, wear and tear to Plaintiffs' cellular phones, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiffs' cellular telephones as a result of increased usage of Plaintiffs' telephone services, and wasting Plaintiffs' time.

32. Moreover, each time Defendant placed a robocall to Plaintiffs' cellular phones, Defendant occupied Plaintiffs' cellular phones such that Plaintiffs were unable to receive other phone calls or otherwise utilize their cellular phones while their phone were ringing.

33. Due to Defendant's refusal to honor Plaintiffs' requests to cancel their services and cease contact with them, Plaintiffs were forced to retain counsel and file this action to compel Defendant to cease its unlawful robocalls.

## CLASS ALLEGATIONS

34. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

35. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals in the United States (1) to whom Defendant or a third party acting on Defendant's behalf (John Does 1-10) placed, or caused to be placed, a call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) without his/her consent; (5) within the four years preceding the date of this Complaint through the date of class certification.

36. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A. Numerosity**

37.     Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

38.     The exact number of the members of the Putative Class is unknown to Plaintiffs at this time and can only be determined through targeted discovery.

39.     The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

40.     The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant.

**B.     Commonality and Predominance**

41.     There are many questions of law and fact common to the claims of Plaintiffs and the Putative Class.

42.     Those questions predominate over any questions that may affect individual members of the Putative Class.

**C.     Typicality**

43.     Plaintiffs' claims are typical of members of the Putative Class because Plaintiffs and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

**D.     Superiority and Manageability**

44. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

45. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

46. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

47. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation**

48. Plaintiffs will adequately and fairly represent and protect the interests of the Putative Class.

49. Plaintiffs have no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiffs.

50. Plaintiffs have retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I:
**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq*.)**
**(On behalf of Plaintiffs and the Members of the Putative Class)**

51. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

52. Section 227(b)(1)(A)(iii) of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or *an artificial or prerecorded voice*" to "any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) (emphasis added).

53. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than forty (40) non-emergency robocalls to Plaintiffs' cellular telephones utilizing an artificial or prerecorded voice without Plaintiffs' consent.

54. As pled above, Defendant used an artificial or prerecorded voice that automatically played upon Plaintiffs answering the call or upon the call reaching Plaintiffs' voicemails.

55. As pled above, Defendant did not have consent to place robocalls to Plaintiffs' cellular phones as Plaintiffs canceled their account with Defendant and requested that Defendant cease its calls on multiple occasions.

56. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

57. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA yet continued to employ them to maximize efficiency and profits at the expense of Plaintiffs and the Putative Class.

58. As pled above, Plaintiffs were harmed by Defendant's unlawful collection calls.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Putative Class, request the following relief:

a. an order granting certification of the proposed class, including the designation of Plaintiffs as the named representatives, and the appointment of the undersigned as Class Counsel;

b. a judgment in Plaintiffs' favor finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

c. an order enjoining Defendant from placing further unlawful calls to Plaintiffs and the members of the Putative Class;

d. an award of $500.00 in damages to Plaintiffs and the members of the Putative Class for each violating call;

e. an award of treble damages up to $1,500.00 to Plaintiffs and the members of the Putative Class for each violating call; and

f. any further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Date: April 29, 2022

Respectfully submitted,

**MITZI CARMAN AND DONALD CARMAN**

By: */s/ Mohammed O. Badwan*
Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiffs*